```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------- x
KATHLEEN S. FAHERTY,            :
                                :
          Plaintiff,            :
                                :
v.                              :    Civil No. 3:21-cv-650(AWT)
                                :
RUBIN & ROTHMAN, LLC and JOHN   :
DOES 1-25,                      :
                                :
          Defendants.           :
------------------------------- x
```

### RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS

The plaintiff, Kathleen S. Faherty, brings this action on behalf of herself and all others similarly situated against defendants Rubin & Rothman, LLC and John Does 1-25. The complaint has one count: a claim for abusive debt collection in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. The defendants move for judgment on the pleadings on two grounds: 1) lack of standing; and 2) failure to state a claim against the defendants for violations of the FDCPA. Because the plaintiff lacks standing, the court does not reach the second ground.

For the reasons set forth below, the defendants' motion is being granted.

I.   **Factual Background**

At some point prior to April 20, 2021, the plaintiff incurred one or more financial obligations to Bank of America by purchasing goods and services, which were primarily for personal, family, and household purposes. First Am. Class Action Compl. and Demand for Jury Trial ("Am. Compl.") at ¶¶ 18-20, ECF No. 7. The debt amounted to approximately $27,213.56. Am. Compl., Ex. E.

On November 9, 2020, D & A Services, LLC, a debt collection agency, sent an initial collection letter to the plaintiff. See Am. Compl., Ex. A. On November 22, 2020, the plaintiff sent a letter to D & A Services, LLC, asking for documentation relating to the agency's authority to collect on the debt. See Am. Compl., Ex. B. On January 7, 2021, having received no response from D & A Services, the plaintiff sent a second letter to the agency. The letter stated, "[t]his is a second notice that your claim is disputed and validation is requested." Am. Compl., Ex. C. On April 2, 2021, the plaintiff sent a third letter to D & A Services, asking for documentation to validate the debt. See Am. Compl., Ex. D. The plaintiff never received the requested verification from D & A Services. Am. Compl., at ¶ 28.

At some point prior to April 12, 2021, Bank of America solicited assistance from Rubin & Rothman to collect on the plaintiff's debt. On April 12, 2021, Rubin & Rothman sent a

collection letter to the plaintiff. See Am. Compl., Ex. E. On April 20, 2021, Rubin & Rothman sent a letter to the plaintiff, enclosing verification of the plaintiff's debt.

The plaintiff contends that by sending the April 12, 2021 debt collection letter to the plaintiff, the defendants violated Section 1692g(b) of the FDCPA. Section 1692g(b) sets forth a debt collector's obligations in the event that a consumer notifies the debt collector in writing, within a thirty-day period, that a debt is disputed:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b). The plaintiff argues that the April 12, 2021 letter violated this provision because the plaintiff had already disputed the debt and requested verification of it in

the letters sent to D & A Services. She contends that the requests for validation sent by her to D & A Services triggered obligations under Section 1692g(b) with respect to Rubin & Rothman and that by sending the April 12, 2021 debt collection letter, the defendants violated Section 1692g(b)'s mandate to cease debt collection efforts upon receipt of a written notice disputing the debt until validation is provided to the debtor.

The plaintiff also claims that sending the April 12, 2021 letter violated Section 1692(e) of the FCDPA. Section 1692(e)(10) of the FDCPA prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692(e)(10). The plaintiff contends that no attorney meaningfully reviewed the plaintiff's file prior to sending the April 12, 2021 letter because had an attorney done so, they would have known that the plaintiff already disputed the debt. The plaintiff argues that by sending the April 12, 2021 letter without any meaningful attorney involvement, and with no indication as to the level of attorney involvement in reviewing her file, the defendants engaged in deceptive means to collect the debt in violation of Section 1692(e)(10).

## II. Legal Standard

"Rule 12(c) provides that '[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.'" Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 301 (2d Cir. 2021) (quoting Fed. R. Civ. P. 12(c)). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." Id. (quoting Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020)). "To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (alteration in original) (quoting Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief . . . calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." Id. (alteration in original) (quoting Lynch, 952 F.3d at 75). In making this assessment, the court "will accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor." Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009) (citing ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)).

### III. Discussion

"Standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" Ross v. Bank of Am., N.A.(USA), 524 F.3d 217, 222 (2d Cir. 2008) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006)). "That is, where a party lacks standing to bring a claim, the court lacks subject matter jurisdiction over that claim and must dismiss it." Kola v. Forster & Garbus LLP, No. 19-CV-10496, 2021 WL 4135153, at *3 (S.D.N.Y. Sept. 10, 2021) (citing SM Kids, LLC v. Google LLC, 963 F.3d 206, 210 (2d Cir. 2020)).

"Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" Maddox v. Bank of New York Mellon Tr. Co., N.A., 19 F.4th 58, 62 (2d Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61, (1992)). "Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stages of litigation,' and at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'" New York v. Yellen, 15 F.4th 569, 575 (2d Cir. 2021) (quoting Lujan, 504 U.S. at 561). "Where, as here, the defendants' challenge to the plaintiffs' standing is 'facial,' meaning that the defendants do not offer any evidence

6

of their own, our task is to determine whether, 'accepting as true all material factual allegations of the complaint, and drawing all reasonable inferences in favor of the plaintiff[],' the complaint 'alleges facts that affirmatively and plausibly suggest that the plaintiff[] ha[s] standing to sue.'" Id. (quoting Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56–57 (2d Cir. 2016)).

"To demonstrate injury in fact, a plaintiff must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." Maddox, 19 F.4th at 62 (quoting Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016)). In determining whether an injury is concrete, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021) (quoting Spokeo v. Robins, 578 U.S. 330, 341 (2016)). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." Id. "[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in

7

fact under Article III. " Id. "Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." Id. (citations omitted). "Congress may 'elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" Id. (quoting Spokeo 578 U.S. at 341). "But even though 'Congress may elevate harms that exist in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is.'" Id. (quoting Hagy v. Demers & Adams, 882 F.3d 616, 622 (6th Cir. 2018)).

The defendants contend that "the [p]laintiff has not suffered any concrete harm as a result of her FDCPA allegations." Mem. L. Supp. Mot. J. on the Pleadings, at 9, ECF No. 16-1. The defendants argue that "[t]he [p]laintiff has not alleged that she had the intent or the ability to pay any or all of her [Bank of America] debt. . . . Nor does the [p]laintiff's claim of 'lack of meaningful attorney review' connote Article III standing." Id.

8

The plaintiff asserts that "Article III standing can be found if the debt collector provided a Section 1692g notice in its initial communication to the consumer but it was so defective that it actually misled the consumer[.]" Mem. L. Opp. Mot. J. on the Pleadings, at 7, ECF No. 21. She claims that the defendants' April 12, 2021 debt collection letter confused and misled her "as to the level, if any, of attorney involvement in meaningfully reviewing the [Bank of America] obligation file notes attributable to [p]laintiff" and as to the validity of the debt. Id. at 8. She argues that had she not been misled, "she would have considered paying other obligations (she did not dispute and/or request verification) before paying the [Bank of America] obligation (since [she] was still waiting for verification and assumed that [Bank of America] had ceased collection in the interim.)" Id. at 9.

The court agrees with the defendants that the plaintiff has failed to allege a concrete harm for purposes of Article III standing. In Devoe v. Rubin & Rothman, LLC, the plaintiff made similar FDCPA allegations, claiming that the debt collection letter sent by the defendants was misleading with respect to the level of attorney involvement in reviewing the plaintiff's file prior to sending the letter. In that case, the court issued an order asking the plaintiff to specify "any concrete, particularized injury in fact from the statutory violations

9

alleged" in the complaint, or, in the alternative, to "provide any authority or basis for plaintiff to assert standing in this action." Order to Show Cause, Devoe v. Rubin & Rothman, LLC, No. 21-cv-03551, (E.D.N.Y June 29, 2021). In response, the plaintiff argued that she had been the victim of a deceptive practice and that common law fraud was a sufficiently "close historical or common-law analogue for [her] asserted injury" to satisfy Article III. Devoe, No. 21-cv-03551, ECF No. 12, at ¶ 6, 7 (quoting TransUnion, 141 S. Ct. at 2204). The court found that the plaintiff lacked standing because the "[p]laintiff allege[d] only informational violations in this instance, the misrepresentation of the debt collector as a law firm, and in all of the filings . . . herein, has not identified any other tangible harm." Order Dismissing Case, Devoe, 21-cv-03351 (E.D.N.Y. Sept. 29, 2021).

As in Devoe, here the plaintiff also alleges only informational harm, i.e. the defendants confused and deceived her. Although the plaintiff is correct that, to establish a concrete injury for purposes of Article III standing, "an 'identifiable trifle,' suffices," Craftwood II, Inc. v. Generac Power Sys., Inc., 920 F.3d 479, 481 (7th Cir. 2019) (quoting United States v. SCRAP, 412 U.S. 669, 689 & n.14 (1973)), the plaintiff provides no authority for the proposition that informational harm, such as confusion or deception, is a legally

10

cognizable injury under Article III. The plaintiff relies on cases that fall into three categories. The first two categories do not support her position, and the case in the third category is not persuasive authority.

One, the plaintiff relies on a number of cases where a plaintiff did not seek to establish Article III standing based solely on informational harm. See id. (receipt of junk faxes held to be a sufficiently concrete injury for Article III because "printing the faxes used paper and toner, which are costly, and the need to read the incoming faxes diverted the time of one or more employees from the businesses' profitable endeavors"); Lupia v. Medicredit, Inc., 8 F.4th 1184, 1191–92 (10th Cir. 2021) (debt collection agency calling the plaintiff after receiving a cease-and-desist letter held to be a sufficiently concrete injury because it "poses the same kind of harm recognized at common law—an unwanted intrusion into a plaintiff's peace and quiet")); Robbins v. Resident Verify, LLC, No. 2:20-CV-578-TC, 2021 WL 3292652, at *3 (D. Utah Aug. 2, 2021) (temporary denial of a lease renewal application and humiliation stemming from erroneous background check held to be sufficiently concrete injuries because "[e]mbarrassment, although intangible, can be a concrete injury under the [Fair Credit Reporting Act]"); Foley v. Mary Washington Healthcare Servs., Inc., No. 3:21-CV-239, 2021 WL 3193177, at *3 (E.D. Va.

11

July 28, 2021) (unnecessary purchasing of stamps to dispute a debt in writing held to be a sufficiently concrete injury for Article III because the plaintiff "incurr[ed] an economic injury she need not have suffered had [the defendant] advised her that she could dispute her debt orally"); Thompke v. Fabrizio & Brook, P.C., 261 F. Supp. 3d 798, 804-806 (E.D. Mich. 2017) (receipt of a debt collection letter written by a non-attorney but printed on a law firm's letterhead and publication of extraneous information about the plaintiffs in a foreclosure notice, which caused "confusion and embarrassment," held to be a sufficiently concrete injury).

 Two, the plaintiff relies on cases that precede TransUnion, which narrowed the categories of intangible harms sufficient to confer Article III standing. "Tangible harms, including '[m]onetary harms' are among those that 'readily qualify as concrete injuries under Article III.' Intangible harms also may be concrete, provided they satisfy the 'close relationship' analysis, in which the 'inquiry [is] whether plaintiffs have identified a close historical or common-law analogue for their asserted injury.'" Kola, 2021 WL 4135153, at *4 (alteration in original) (quoting Spokeo, 136 S. Ct. at 1549). Although the court in Degrasse v. Fin. Recovery Servs., Inc., No. 16-CV-3727, 2018 WL 2214651, at *3 (E.D.N.Y. Mar. 5, 2018), found that procedural violations of the FDCPA sufficed to confer Article

III standing, Degrasse preceded TransUnion, and the Second Circuit caselaw that it cites does not identify a close historical or common-law analogue for this injury, which is now "[c]entral to assessing concreteness." TransUnion, 141 S. Ct. at 2200. See Strubel, 842 F.3d at 190; Papetti v. Does 1-25, 691 F. App'x 24, 25 (2d Cir. 2017). The same is true with respect to Napolitano v. Ragan & Ragan, where the court found that receiving a debt collection letter that falsely implied that an attorney had meaningfully reviewed the case sufficed to establish injury for purposes of Article III. Napolitano v. Ragan & Ragan, No. CV 15-2732, 2017 WL 3535025, at *5-7 (D.N.J. Aug. 17, 2017). Also, while the court in Martin v. Trott L., P.C. found that a plaintiff being deceived and misled "about the extent of their debts and the status of legal proceedings related to collection of them" was a sufficiently concrete injury for purposes of Article III, the court perceived this injury to involve a "real risk of harm" because the plaintiff was "deprived of an accurate understanding of his situation by the defendants' misinformation." Martin v. Trott L., P.C., 265 F. Supp. 3d 731, 747, 748 (E.D. Mich. 2017). Here, the defendants' April 12, 2021 letter to the plaintiff contained no misinformation. It informed the plaintiff that the defendants had begun debt collection procedures and accurately described the plaintiff's rights under the FDCPA.

Three, the plaintiff relies on a post-TransUnion case involving FDCPA claims, where the court held that false, misleading, and deceptive debt collection communications that confuse the recipient suffice to establish injury for purposes of Article III. See Perez v. McCreary, Veselka, Bragg & Allen, P.C., No. 1:19-CV-724-RP, 2021 WL 3639801 (W.D. Tex. Aug. 17, 2021). The court stated that "even if [the plaintiff] is required to show an injury in addition [to] the FDCPA violation itself, familiarity with the FDCPA does not foreclose confusion from a misleading letter, similar to the 'anxiety, and worry' that other courts have found to be sufficient for an injury regarding an FDCPA claim." Id. at *3 (citing Smith v. Moss L. Firm, P.C., No. 3:18-CV-2449-D, 2020 WL 584617, at *5 (N.D. Tex. Feb. 6, 2020); TransUnion, 141 S. Ct. at 2211)). This case appears to be an outlier, and the court finds more persuasive the analysis in cases that hold to the contrary. See, e.g., Pennell v. Glob. Tr. Mgmt., LLC, 990 F.3d 1041, 1045 (7th Cir. 2021) ("[T]he state of confusion is not itself an injury [for purposes of Article III]"); Garland v. Orlans, PC, 999 F.3d 432, 437, 439 (6th Cir. 2021) ("Confusion does not have 'a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit.' . . . [A] bare allegation of anxiety is not a cognizable, concrete injury.'" (quoting Spokeo, 136 S. Ct. at 1549)).

Finally, Kola v. Forster & Garbus LLP, No. 19-CV-10496, 2021 WL 4135153, (S.D.N.Y. Sept. 10, 2021), is instructive. In Kola, the court held that "merely receiving a letter from a debt collector that was confusing or misleading as to the amount owed does not demonstrate a harm closely related to fraudulent or negligent misrepresentation – both of which require some form of reliance – where the recipient's financial condition made the amount of money owed irrelevant." Kola, 2021 WL 4135153, at *7. As in Kola, here the plaintiff "has failed to establish that she relied on the letter in making any decision about paying the debt." Id. Although the plaintiff asserts that "she would have considered paying other obligations . . . before paying the [Bank of America] obligation," the plaintiff does not claim to have actually paid any portion of the Bank of America debt. Pls.' Resp. Defs.' "Notice of Req. for Permission to Suppl. Mot. J. on the Pleadings," at 3-4, ECF No. 37. Moreover, "[w]hile the letter may have caused some confusion, it was not in fact a misrepresentation of the amount Plaintiff would have had to pay to satisfy the debt. This brings [p]laintiff's alleged injury even further from common-law fraud or negligent misrepresentation." Kola, 2021 WL 4135153, at *7.

**IV. <u>Conclusion</u>**

For the reasons set forth above, the defendants' Motion for Judgment on the Pleadings (ECF No. 16) is hereby GRANTED. The Clerk shall enter judgment accordingly and close the case.

It is so ordered.

Signed this 6th day of April 2022 at Hartford, Connecticut.

/s/ AWT
Alvin W. Thompson
United States District Judge
